## (June 16, 1983)

■ LEIGHTON's INC., Appellant, v CENTURY CIRCUIT, INC., Respondent. — Judgment, Supreme Court, New York County (McCooe, J.), entered December 28, 1982, which, *inter alia,* declared the notice to terminate to be effective, reversed, on the law, and vacated, without costs. Order, Supreme Court, New

York County (McCooe, J.), entered November 30, 1982, granting defendant's motion and denying plaintiff's cross motion for summary judgment, modified, on the law, by denying defendant's motion, and, as modified, affirmed, without costs. On June 3, 1970, plaintiff Leighton's, Inc. entered into a 20-year lease with RKO Stanley Warner Theatres, Inc. (RKO). Under this lease, plaintiff rented the first two floors and the basement in a building located at 1571-1585 Broadway. On December 30, 1974, plaintiff and RKO entered into a lease amendment that provided in relevant part: "4. As inducement to and in consideration of the Landlord entering into this Amendment of the referred to Lease and the Letter Agreement thereto, Tenant agrees that the Landlord, its successors or assigns, may cancel this Lease in the following manner by the Landlord giving the Tenant five (5) years prior written notice by Registered Mail, Return Receipt Requested, provided said notice is given to the Tenant during the Calendar year 1975. The Landlord shall give the Tenant four (4) years prior written notice of the cancellation as provided, if the notice is given during the Calendar year 1976. The Landlord shall give the Tenant three (3) years prior written notice of cancellation as provided, if the notice is given during the calendar year 1977 or any year thereafter during the term of the Lease or any extension thereof. The foregoing right of cancellation by the Landlord or its successors or assigns shall be based upon the Landlord's bonafide contractual obligation: (1) To sell the entire building and/or buildings of which the demised premises are a part, or (2) To demolish the building and/or buildings of which the demised premises are a part, which demolition is of such a substantial nature that the demised premises are to be demolished as part of such plan. It is understood between the parties that such demolition and/or tearing down as hereinabove provided may be done by the Landlord or by a bonafide lessee of all or a portion of the building and/or buildings, or theatre therein situated, of which the demised premises are a part". On or about July 29, 1982, the defendant, RKO's successor in interest, delivered a written notice of cancellation to the plaintiff. The notice informed the plaintiff tenant that the lease is canceled as of August 31, 1985 because defendant landlord elected to demolish the building. Plaintiff then brought this action for a declaration that the notice to cancel was not effective. It was plaintiff's contention that the notice could not be effective under paragraph 4 of the lease amendment since it was not based upon the defendant's bona fide contractual obligation to demolish the building. The plaintiff also stressed that the defendant was required to obtain permission of the four mortgagees before the building could be demolished. It was defendant's contention that the contract to demolish need only be executed before the effective date of cancellation, August 31, 1985. Special Term found no ambiguity in paragraph 4 of the lease amendment and made a declaration in defendant's favor that the notice to terminate was effective. A motion for summary judgment should be denied if critical contractual language raises a question as to the real intent of the parties (*S & S Media v Vango Media,* 84 AD2d 356, 360). In attempting to resolve an ambiguity in language, a contract must be construed most strongly against the party who prepared it (*67 Wall St. Co. v Franklin Nat. Bank,* 37 NY2d 245, 249). A contractual provision giving a party an option to terminate a lease will be strictly construed by the courts. (*Dubois & Son v Goldsmith Bros.,* 273 App Div 306, 309.) The "key words" in paragraph 4 of the lease amendment are the "right of cancellation by the Landlord * * * shall be based upon the Landlord's *bonafide contractual obligation* * * * To demolish the building". The defendant does make a plausible argument that, normally, a landlord does not enter into a demolition contract three years before a scheduled demolition date. Therefore, the notice to terminate was effective and it should be permitted to execute a demolition contract on any date before

August 31, 1985. Nonetheless, plaintiff's position is also plausible. The plaintiff reads the "key words" as implying the necessity for the pre-existence of the demolition contract. The plaintiff's interpretation is supported by the fact that the words "based upon" are used in the past rather than the future tense. Moreover, the "key words" would seem to become superfluous to the lease amendment unless they are read to express a requirement that the demolition contract predate the service of the notice to terminate. The plaintiff emphasizes that, under defendant's interpretation of paragraph 4, it might unfairly be forced to relinquish the premises even though the building might not be demolished. Plaintiff notes that defendant must obtain permission from the mortgagees before the building may be demolished. Plaintiff points out the possibility that such permission might not be obtained. Thus, under defendant's view of the lease amendment, plaintiff would be required to make plans to obtain a new lease in a different location once the notice to terminate was served. However, it is conceivable that, after service of the notice, the mortgagees might not give defendant permission to demolish the building. It is plaintiff's position that the notice to terminate must be predicated upon an existing demolition contract since such contract would ordinarily not be executed until permission had been obtained. The demolition contract would evidence the fact that defendant was proceeding in good faith. As was mentioned above, this court must strictly enforce the terms of the amendment drafted by RKO, defendant's predecessor in interest. In view of the patent ambiguity in paragraph 4, a trial is necessary to ascertain the intent of the parties with regard to that provision. Concur — Murphy, P. J., Kupferman and Alexander, JJ.

Silverman and Fein, JJ., dissent in a memorandum by Fein, J., as follows: I would affirm for the reasons stated by Justice William P. McCooe at Special Term. Unlike the majority, I do not find the language of the lease ambiguous. Where the language of a lease is clear and unambiguous, its plain meaning should govern its interpretation. A restrictive interpretation which achieves an unreasonable result is not justified (*Morlee Sales Corp. v Manufacturers Trust Co.,* 9 NY2d 16; *R. I. Realty Co. v Terrell,* 254 NY 121, 124-125). It is inappropriate to go further than the contract itself where the language plainly evidences the intention of the parties (*Laba v Carey,* 29 NY2d 302, 308; *Hall & Co. of N. Y. v Orient Overseas Assoc.,* 65 AD2d 424, 428, affd 48 NY2d 958). A contract or lease should be given a "fair and reasonable interpretation", based on its language, in light of the purposes sought to be attained by the parties. An unreasonable interpretation or an absurd result is to be avoided (*Farrell Lines v City of New York,* 30 NY2d 76, 82-83; *Nassau Ch., Civ. Serv. Employees Assn. v County of Nassau,* 77 AD2d 563, 564, affd 54 NY2d 925). There is no more likely way to misapprehend the meaning of the language than to read the words literally, forgetting the object which the document as a whole seeks to achieve (*Cabell v Markham,* 148 F2d 737, 739). The interpretation of the lease, argued for by the tenant, would require the landlord to enter into a firm and binding demolition contract three years prior to the termination of the lease. Had the notice been given in 1975, five years' notice would have been required, subject to a binding demolition contract to take effect in five years. Had the notice been given in 1976, four years' notice would have been required with a binding demolition contract to take effect in four years. It is beyond belief that this was in the contemplation of the parties when the language was written and agreed to. It flies in the face of ordinary experience. A "construction of a contract which produces unreasonable results should be avoided, if possible, and * * * a more reasonable construction should be sought (*Fleischman* v. *Furgueson,* 223 N. Y. 235, 241; Restatement, Contracts, § 236, subd. [a])"

(*Chemung Canal Trust Co. v Montgomery Ward & Co.,* 4 AD2d 95, 102). The dire consequences portrayed by the tenant are hardly relevant in determining the meaning of the provision in the absence of a shred of evidence that at the time the agreement amending the lease was entered into there was a discussion concerning this issue. Moreover, such consequences would appear not to be as serious as urged. The tenant had three years from the date of the notice to make arrangements to move; ample time, it would appear. Further, it was the time prescribed in the lease. "The intention of the parties is fully determinable from the language employed in the agreement (see 4 Williston, Contracts § 600, at p 280), and there is no need to resort to evidence outside the written words to determine the intention of the parties. Accordingly, as no question of fact was presented but only one of law — the interpretation of the written agreement — summary judgment was proper (see *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291)." (*Long Is. R.R. Co. v Northville Inds. Corp.,* 41 NY2d 455, 461.) What remedies will be available to the tenant, if the landlord fails to proceed with demolition upon surrender of the premises by the tenant, need not be considered now. Accordingly, the judgment and order appealed from should be affirmed.