(December 13, 1989)

■ VINCENT AMATULLI, JR., an Infant, by His Mother and Natural Guardian, LORRAINE AMATULLI, et al., Respondent-Appellant, v DELHI CONSTRUCTION CORPORATION, Respondent; BROTHERS THREE, INC., Defendant and Third-Party Plaintiff-Appellant-Respondent, and SEASPRAY SHARKLINE, INC., Defendant and Third-Party Plaintiff-Respondent. PATRICK DALY, Doing Business as WOODSMAN CONSTRUCTION COMPANY, et al., Third- and Fourth-Party Defendants-Respondents; PHILIP SUSI et al., Defendants and Fourth-Party Plaintiffs-Appellants-Respondents.—In an action to recover damages for personal injuries, etc., (1) the defendants Brothers Three, Inc. and Janet and Philip Susi separately appeal from so much of an order and judgment (one paper) of the Supreme Court, Suffolk County (Gerard, J.), entered March 11, 1988, as, in effect, denied their respective motions for summary judgment dismissing the complaint insofar as it is asserted against them and any cross claims and counterclaims against them, (2) the defendants Philip and Janet Susi further appeal from so much of the same order and judgment as granted that branch of the cross motion of the defendant Seaspray Sharkline, Inc., which was to dismiss their cross claim as against it, and (3) the plaintiff cross-appeals as limited by his brief, from so much of the same order and judgment as granted that branch of the cross motion of the defendant Seaspray Sharkline, Inc., which was for summary judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order and judgment is affirmed insofar as appealed and cross-appealed from, with one bill of costs to the defendant Seaspray Sharkline, Inc., payable by the defendant third-party plaintiff-appellant-respondent, the defendants fourth-party plaintiffs-appellants-respondents and the plaintiff-respondent-appellant, appearing separately and filing separate briefs.

We conclude that the Supreme Court properly granted the defendant Seaspray Sharkline, Inc. (hereinafter Seaspray) summary judgment dismissing the complaint and the cross claim against it. The uncontroverted facts reveal that the plaintiff Vincent Amatulli, an experienced swimmer and diver, injured himself by diving into a four-foot-deep pool. The pool was designed and manufactured by the defendant Seaspray and sold with specific instructions for above-the-ground installation. Contrary to these instructions, the pool was sunk two feet into the ground and surrounded by a deck, thereby creating the impression of being an in-ground pool and possibly an illusion of greater than actual water depth.

The plaintiffs alleged that the pool was defective in that the design failed to include an adequate warning of the pool's depth. Specifically, in opposition to Seaspray's motion for summary judgment, the plaintiffs submitted an affidavit of an expert that the pool lining should have been white and that depth markings should have been put on the liner and pool decking.

Under these circumstances, the defects alleged are insufficient, as a matter of law, to raise a factual issue regarding Seaspray's liability. The pool was safe when it left the manufacturer's plant. If it had been installed in accordance with the manufacturer's specifications, i.e., completely above the ground, the depth of the pool would have been obvious. There is no duty to warn users of above-ground pools of the obvious dangers of diving into such pools since a cursory visual inspection reveals the depth of the water (see, Caris v Mele, 134 AD2d 475; see also, Smith v Stark, 111 AD2d 913, affd 67 NY2d 693). Such commonsense patent observation was equivalent to a warning (see, Prosser and Keeton, Torts § 96 [5th ed]; Smith v Stark, supra; Howard v Poseidon Pools, 72 NY2d 972). The law imposes no further obligation on the part of the manufacturer to enforce its clear instructions that the pool was designed and manufactured to be installed above the ground.

The statement by the plaintiff's expert that in-ground instal-

lation of above-ground pools was a common practice of which Seaspray should have been aware is also insufficient to create a triable issue of fact. There is no evidence that Seaspray was aware that this pool or any of the above-ground pools which it had manufactured had been installed in the ground. Moreover, the principles of foreseeability are irrelevant in an action sounding in strict products liability where the finished product, safe at the time it left the manufacturer's plant, has been subjected to a material alteration by a third party which created a new potential danger *(see, Robinson v Reed-Prentice Div.,* 49 NY2d 471, 480-481; *cf., Kriz v Schum,* 75 NY2d 25).

. Under our law, a manufacturer does not have the duty to design a product that is impossible to misuse or one whose safety features cannot be circumvented. "Nor must [it] trace [its] product through every link in the chain of distribution to insure that users will not adapt. the product to suit their own unique purposes" *(Robinson v Reed-Prentice Div., supra,* at 481). There is no evidence in the record nor even any allegation by the plaintiff that the pool was designed to be installed in the ground *(cf., LaPaglia v Sears Roebuck & Co.,* 143 AD2d 173). Thus, the doctrine established in *Lopez v Precision Papers* (67 NY2d 871; *see also, Kriz v Schum, supra)* is inapposite.

With respect to the defendants Philip and Janet Susi, the owners of the pool, and Brothers Three, Inc., the distributors of the pool, there are material triable issues of fact, including the allegedly negligent installation of the pool in such a manner as to conceal its depth. Accordingly, we affirm the Supreme Court's denial of summary judgment in their favor. Spatt, Harwood and Rosenblatt, JJ., concur.

Kooper, J. P., concurs in part and dissents in part and votes to modify the order and judgment appealed from by deleting the provision thereof which granted the cross motion of the defendant Seaspray Sharkline, Inc., for summary judgment, and substituting therefor a provision denying that cross motion, and as so modified, to affirm the order and judgment insofar as appealed and cross appealed from, with the following memorandum: I am unable to concur in the determination reached by my colleagues in the majority that the defendant Seaspray Sharkline, Inc., has established its entitlement to summary judgment on the record before us. Since I discern the existence of material issues of fact precluding the granting of summary judgment, I must dissent in part and cast my vote in favor of modifying the order and judgment so as to deny its cross motion for summary judgment.

Summary judgment deprives a litigant of his day in court, and, therefore, is considered a drastic remedy which should be employed only when there is no doubt as to the absence of triable issues *(see, Andre v Pomeroy,* 35 NY2d 361; *see also, Rotuba Extruders v Ceppos,* 46 NY2d 223; *Mayland v Craighead,* 144 AD2d 344, 346; *Matter of Benincasa v Garrubbo,* 141 AD2d 636, 637; *Sacks v Weiss,* 122 AD2d 937). "The function of the court when faced with a motion for summary judgment is issue finding rather than issue determination" *(Mayland v Craighead, supra,* at 346). Moreover, the resolution of issues of credibility is not proper on a motion for summary judgment "unless it clearly appears that the issues are 'not genuine, but feigned' " *(Calabrese v Childs,* 149 AD2d 557, 558, quoting from *Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439, 441).

The record reveals that in support of its motion for summary judgment Seaspray Sharkline, Inc., argued, *inter alia,* that: (1) its pool was neither defectively manufactured nor defectively designed, (2) it owed no duty to warn the plaintiff of the obvious dangers associated with the use of a pool, and (3) the in-ground installation of its pool by its owners—the defendants Susi—constituted a material alteration of the pool for which it was not responsible "no matter how foreseeable such modifications may have been to the manufacturer". In opposition to the motion, the plaintiff submitted, *inter alia,* the affidavit of Gaston L. Raffaelli, a mechanical engineer, who—according to his affidavit—"has been actively engaged for more than 30 years in his professional status as an Engineer and as a consultant in the design, engineering and construction of swimming pools". According to Mr. Raffaelli, the pool manufactured by Seaspray Sharkline, Inc., was "dangerously and defectively designed" in several significant respects. Firstly, it was Mr. Raffaelli's view that the use of an aqua, rather than a white, pool liner created "an optical and visual trap for the unsuspecting bather" and—in conjunction with the in-ground installation of the pool—"disguised and camouflaged" the actual depth of the water. Further, Mr. Raffaelli offered his opinion that the absence of depth markings on the pool decking and liner, and the failure to post sufficiently visible "no diving" signs on the pool stanchions, constituted deviations from accepted safety standards. Mr. Raffaelli also stated that the in-ground installation of the pool was a common practice in the industry and that "Seaspray Sharkline knew or should have known that their *[sic]* pools

were being installed in the ground or partially in the ground to the unrecognized detriment of the user".

The reply papers of Seaspray Sharkline, Inc., failed to contradict the assertions of the plaintiff's expert to the extent that it can be concluded that no issues of fact remain for trial. Although Seaspray Sharkline, Inc., argued that "the depth of the pool [as designed by Seaspray] was clear to anyone using it", the pool in question was installed in ground, thereby disguising its actual depth. Moreover, that Seaspray Sharkline, Inc., designed the pool for above-ground installation does not necessarily compel the conclusion that it owes no duty to the plaintiff under the circumstances presented. Mr. Raffaelli's unrefuted affidavit avers that the in-ground installation of such a pool—and its attendant dangers—were well known in the industry and that, accordingly, Seaspray Sharkline, Inc., knew, or should have known of the practice and provided safety features to protect its users from the inherent damages of the practice (cf., Lopez v Precision Papers, 67 NY2d 871, 873; see also, Sage v Fairchild-Swearingen Corp., 70 NY2d 579; McAvoy v Outboard Mar. Corp., 134 AD2d 245; Ayala v V & O Press Co., 126 AD2d 229). Both the Supreme Court and the majority have ignored Mr. Raffaelli's assertions in this respect, thereby contravening the well-established principle that issues of credibility are not to be resolved on a motion for summary judgment (see, Calabrese v Childs, 149 AD2d 557, supra).

Moreover, the cases relied on by Seaspray Sharkline, Inc., in arguing that the plaintiff was chargeable with knowledge of the risks associated with diving into the pool are distinguishable, since in those cases—which did not involve in-ground installation of above-ground pools—the injured plaintiffs were clearly aware of the pool depths either by observation or prior use (see, e.g., Howard v Poseidon Pools, 72 NY2d 972; Belling v Haugh's Pools, 126 AD2d 958; Smith v Stark, 67 NY2d 693). At bar, there is nothing in the record which suggests that the plaintiff is chargeable—as a matter of law—with the knowledge of the pool's depth by prior experience. While Seaspray Sharkline, Inc., relies upon statements in the plaintiff's deposition to the effect that he was aware of the shallow depth of the pool prior to his dive, a closer review of the record reveals that plaintiff was describing his perception of the pool depth around its perimeter, which appeared to be shallow. The plaintiff further testified, however, that the bottom of the pool appeared to slope down in the middle and that he intended to dive into this area of the pool.

In light of the foregoing, summary judgment should have been denied to Seaspray Sharkline, Inc.